NIX, IMPLEADED WITH, ETC., v. THE FIRST NATIONAL BANK OF PUEBLO.

1. PARTNERSHIP—NEW PARTNER'S LIABILITY.

An incoming partner is not liable for the debts of the old firm unless he promises so to be; but, in the absence of direct evidence, such promise may be inferred from circumstances and the conduct of the new firm.

2. SAME.

A promise by the incoming partner to be liable for the debts of the old firm is not inferable under the circumstances of this case.

3. APPELLATE PRACTICE—NEW TRIALS.

An assignment of error that the verdict is manifestly against the weight of the evidence is well laid, if the verdict is not supported by any sufficient evidence and is clearly the result of mistake and misapprehension or of bias and prejudice.

*Appeal from the District Court of Ouray County.*

THIS is an action brought by The First National Bank of Pueblo against W. S. Home and C. H. Nix, copartners as W. S. Home & Company, and is based upon two several promissory notes, aggregating the sum of $3,750, payable to E. J. Bent, as cashier, signed W. S. Home & Company.

For answer, defendants aver that the notes in question are not the notes of defendants as copartners under the name and style of W. S. Home & Company, for the reason that said notes were given in renewal of notes theretofore executed by the firm of W. S. Home & Company, composed of W. S. Home and one D. C. Hartwell; and that the notes sued upon were executed by defendant W. S. Home, without any right or authority to bind the firm of W. S. Home & Company, composed of W. S. Home and defendant Nix; that the notes were not given for indebtedness which the latter firm had ever assumed or agreed to pay, and that said notes had never been ratified by the latter firm.

By way of replication, plaintiff avers that prior to the execution of the notes sued on, the defendant C. H. Nix bought

the interest of Hartwell in the former firm of W. S. Home &
Company, and thereby became a member of the new firm of
W. S. Home & Company, consisting thereafter of Home and
Nix ; that by the terms of such purchase it was agreed by
Nix, for and on behalf of the new firm, that said firm should
assume the liabilities of the old ; that in pursuance of such
agreement the notes sued upon were executed and delivered
as the obligations of the new firm.   The case was tried to a
jury.   Among other instructions, the defendant asked the
following, which were refused :

No. 2. " The court instructs the jury that if you believe
from the evidence that when the renewal note sued on in this
action was given by W. S. Home, that it was the intention
of the said Home, as well as of the payee of the said note,
that it should be given and received as the note of the old
firm of W. S. Home & Co., composed of W. S. Home and
D. C. Hartwell, and not as the note of the new firm of W. S.
Home & Co., composed of W. S. Home and Charles H. Nix,
and if you further believe from the evidence that the plaintiff
in this action acquired such note with knowledge of such giv-
ing and receipt of the said renewal note, then you will find
the issues herein joined for the defendants."

No. 4. " The court instructs the jury that if a partner
mortgage or sell his interest in the assets of a partnership,
the mortgagee or assignee is entitled only to the share of the
partner in the surplus after all partnership claims have been
paid, and that the mortgagee or assignee by reason of such
mortgage or sale incurs no personal liability for a deficit in
case the shares so transferred to him will not pay debts or
balances, and no personal judgment can be awarded against
him unless he has agreed to assume that burden, and this is
the law even if he is taken into the firm.   He is not deemed
to assume existing debts, and if the jury believes from the
evidence that the sale of February 25, 1892, from D. C. Hart-
well to Charles H. Nix, of all the right, title and interest of
Hartwell in the property and old firm of W. S. Home, com-
posed of D. C. Hartwell and W. S. Home, was either an

absolute sale or given as security to said Nix, the court in-
structs you that such sale entitles said Nix only to the share
of the said Hartwell in the surplus after all partnership claims
against said old firm of W. S. Home & Co. were satisfied,
and by reason of such sale or transfer to said Nix, said Nix
did not incur any liability to pay the note sued on in this
action, unless the said Nix or said new firm consented to the
making of such note."

Verdict and judgment in favor of plaintiff for the sum of
$4,448.18. To reverse this judgment the defendant Nix
brings the case here on appeal.

Mr. R. D. THOMPSON and Mr. HARVEY RIDDELL, for
appellant.

Mr. CHARLES E. GAST, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

From the foregoing statement it appears that the notes
sued on were renewal notes executed by W. S. Home, in the
name of W. S. Home & Company, in satisfaction of prior
notes executed by the old firm of W. S. Home & Company,
composed of Home and Hartwell; and the liability of Nix
thereon depends upon whether or not they were executed
with his knowledge and consent. In other words, whether,
in purchasing Hartwell's interest in the partnership business
of the old firm of W. S. Home & Company, he assumed and
agreed to pay the debts of that firm. This constituted the
only question of fact that the jury were to determine.

It is conceded that the law is well settled that an incoming
partner is not liable for the debts of the old firm, unless he
specially promises to become so. But the rule also obtains
that, in the absence of direct evidence, such promise may be
inferred from circumstances, and the conduct of the new
firm. The verdict in this case is sought to be sustained
alone by the latter character of evidence, against the positive

testimony of Nix that he never did agree to assume the payment of the notes.

That we may better understand the force of the circumstances relied on, a brief statement of the facts surrounding this transaction is necessary. It appears that Hartwell was indebted to plaintiff in the sum of about $42,000, to secure which it held trust deeds and chattel mortgages on nearly all of his property. He was also indebted to Nix in the sum of about $20,000, for which he held no security. At the suggestion of Mr. Bent, Nix entered into an arrangement by which he was to assume the payment of Hartwell's indebtedness to the bank, in consideration that the bank would turn over to him the securities that it held. In pursuance of this arrangement, he executed his note for $42,000 to the bank, and took from Hartwell his note for $65,119. The latter note, together with the securities, were deposited in plaintiff's bank at Ouray. In addition to the property owned by Hartwell, covered by the securities held by plaintiff bank, he had a partnership interest in the mercantile firm of W. S. Home & Company, doing business in the city of Ouray. Upon the suggestion of Bent, Nix entered into negotiations with Hartwell to procure his interest in the latter firm as further security for the $65,119 note. Upon information received from Bent, and the estimate of Hartwell as to the amount of his interest over and above all partnership liabilities, Nix, on February 25, 1892, took from him a bill of sale of that interest, for the recited consideration of $6,500. Nix testifies that the bill of sale was given as security, and that he purchased and was to receive only such interest as Hartwell had in the business, after the firm liabilities were paid; that he knew nothing of the firm's liabilities, and did not assume the payment of any of them. The record contains a stipulation as to what Hartwell, if present, would testify to, which contains the following:

" That on February 25, 1892, he was indebted to C. H. Nix, the defendant, in the sum of about $62,000, and that, to secure payment of the same, he executed to and in favor

of said Nix a trust deed on certain real estate, gave him a bill of sale of his interest in the firm of and stock of goods of W. S. Home & Co. * * * No particular portion of said indebtedness or any particular sum was set off against the interest of Hartwell in the firm of W. S. Home & Co., although the bill of sale therefor expressed a consideration of $6,500. This was because it was calculated by Hartwell, and so represented by him, that his half interest in said firm and the property thereof would realize about that sum, after payment of the firm's indebtedness."

Mr. Bent testified:

" Q. Then, as I understand it, Mr. Nix assumed the liability of Mr. Hartwell to the bank, and, after adding that to the indebtedness previously existing from Hartwell to him, took all these securities for the purpose of securing himself? A. Yes, sir.

" Q. Now, were you aware of the fact that among these securities was this bill of sale to Hartwell's half interest in the firm of W. S. Home & Co.? A. Yes, sir."

On cross-examination:

" Q. Now, Mr. Bent, in order to get this matter clearly before the jury, this note that Mr. Nix gave to the bank for Mr. Hartwell's indebtedness had no reference whatever to this transaction sued on in this case, did it? A. No, sir, it was a separate transaction.

*   *   *   *   *   *   *   *

" Q. Now, when Mr. Nix got this bill of sale, and it was attached to the note, you knew he took it as security, did you not, from Hartwell? A. Yes, sir."

The positive statement of Nix that he did not assume or agree to pay the debts of the old firm, corroborated as it was by the character and extent of the interest he purchased in the property of that firm, and the purpose for which he acquired it, was overcome in the estimation of the jury, and rightly so it is contended by counsel for appellee, because, in brief, the business was carried on after the purchase the same as it had been before that time,—no invoice taken, no

new set of books opened, or the old books balanced,—no change in the management of the business except the introduction of a Mr. Sparks, a relative of defendant, into the store, who kept the books and attended to the finances, and who, under direction of Home, drew a check for the interest due on the notes in suit, without the knowledge or consent of Nix.

It is true, as before stated, that in the absence of any direct or positive testimony of a special promise on the part of an incoming partner to pay the debts of the old firm, such promise may be inferred from circumstances. In some instances evidence of such an agreement is found in the manner in which the business is conducted and books kept—payments made by the new firm on debts of the old with the knowledge and consent of the incoming partner, or equivalent circumstances brought home to his knowledge, that signify an intent on his part to recognize and pay the debts of the old firm. But in reading the evidence contained in this record, we find no circumstance to which any such significance can properly attach. The manner in which the business was conducted and the books kept, and the paying of debts of the old firm out of the proceeds of the stock sold, was consistent with the purpose sought to be accomplished by defendant in purchasing Hartwell's interest, to wit, the application on Hartwell's indebtedness to him of the residue of his interest in the stock, if any, after the debts of the old firm were paid therefrom. His relationship to the property and business of the firm of W. S. Home & Company was well known to Bent, the payee of the notes; as was also the further fact that he never intended to, and never did, have any personal supervision of the business of the firm; and that the payment by Home and Sparks of interest on the notes in suit was made without his knowledge or consent. Therefore, the reasons which gave any persuasive force or evidential value to circumstances of this character in determining the existence or nonexistence of a special agreement, on the part of an incoming partner to answer for the debts of the old firm, are entirely lacking. Hence the circumstances relied upon were

entirely insufficient to establish the necessary promise on the part of defendant, and especially so against the positive testimony to the contrary.

We think, therefore, the first assignment of error, based upon the ground that the verdict is manifestly against the weight of evidence, is well taken. It is not supported by any sufficient evidence in the case, and is clearly " the result of mistake and misapprehension, or of bias and prejudice,". and ought not to be permitted to stand. *Mitchell v. Reed*, 16 Colo. 109; *Caldwell v. Willey*, 16 Colo. 169.

We think it fairly appears from the evidence that Nix was unaware of the existence of the notes sued on at the time he acquired Hartwell's interest in the partnership property; and that there is testimony tending to show that Bent accepted the renewal note with the knowledge that it was not given with the consent of Nix, and that Home intended it as the note of the old firm of W. S. Home & Company. The defendant was entitled to have this fact submitted to the jury, as requested in instruction No. 2; and the court erred in refusing to give it; also in refusing to give instruction No. 4, which stated the law applicable to the theory of defendant's case.

It is unnecessary to notice in detail the other assignments of error, since, for the foregoing reasons, the judgment must be reversed, and the cause remanded for a new trial.

*Reversed.*