50        D. & R. G. R. R. Co. v. Vitello.        [34 Colo.

[No. 4564.]

The Denver and Rio Grande Railroad Company
v. Vitello.

1. **Appellate Practice—Abstract of Record—Evidence.**

The supreme court is not bound to consider evidence
not incorporated in the abstract of record but in its discretion
it may do so if it desires more full information than appears
in the abstract.

2. **Railroads—Negligence—Instructions—Verdicts.**

In an action against a railroad company for damage for the
death of an employee killed by its train, where the cause was
tried on the theory that defendant was liable alone for the
negligence of the conductor and the instructions limited defend-
ant's liability to the negligence of the conductor, and the evi-
dence conclusively showed that the conductor was not negli-
gent and that the negligence causing the injury was that of
a brakeman, a verdict for plaintiff should be set aside as con-
trary to the instructions of the court.

3. **Appellate Practice—Verdicts—Evidence.**

A verdict which is but slightly supported by and is mani-
festly against the weight of the evidence is not conclusive upon
the appellate court and will be set aside.

4. **Evidence—Expert Witnesses—Negligence—Railroads.**

In an action against a railroad company for damage for the
death of an employee, killed by a portion of a train of cars
which had been detached from the locomotive and left standing
on the track escaping and running down the track, where the
question to be determined by the jury was, who was in charge
of that part of the train, it was error to permit witnesses to
be asked and to answer the question, "Who was responsible for
the proper securing of the train upon a grade?" It was also
error to permit witnesses to testify as to what they would have
done under the circumstances if they had been the conductor
in charge of the train.

5. **Instructions—Evidence.**

Where a fact to be determined by a jury is fairly disputable
and the evidence is such that reasonable minds might disagree
it is error for the court to tell the jury that the matter is undis-
putable.

*Appeal from the District Court of Arapahoe County:
Hon. S. L. Carpenter, Judge.*

Messrs. Wolcott, Vaile & Waterman and Mr. W. W. Field, for appellant.

Messrs. Carlon, Skelton & Morrow, for appellee.

Mr. Justice Bailey delivered the opinion of the court.

Before considering the merits of the exceptions made by appellant, it may be well to state that something like two years after appellee had filed her written brief she filed a supplemental brief, wherein she claimed that the record and the abstract in this case are in such condition that the case cannot be reviewed because—

First: The motion to suppress the Farnum deposition is not before the court for the reason that it is not incorporated in the bill of exceptions.

Second: The sufficiency of the evidence cannot be considered because the bill of exceptions does not include the depositions of certain of the witnesses and because the exhibits 1 to 6 are not attached to and made a part of the abstract.

It is not necessary to determine whether the motion to suppress the deposition of Farnum became a part of the record proper or should be incorporated in the bill of exceptions because the deposition, together with the objections made to it, appear both in the record proper and in the bill of exceptions. The same is true as to the depositions of Jesse T. Campbell, Axel Borg, John Lynch and J. Kinney.

As to the exhibits, it affirmatively appears in the bill of exceptions that they were attached to and made a part of the bill of exceptions. These exhibits are photographs which are somewhat unwieldy and could not be conveniently inserted in the bill of exceptions in the order in which they were introduced, but, as stated therein, are attached to the same and

properly identified. Counsel makes a further objection that these exhibits and depositions may not be considered by the court because the exhibits are not incorporated in the abstract, and because only a portion of each deposition is incorporated in the abstract.

This court has repeatedly held that it is not bound to go to the bill of exceptions in search of evidence, but it has at no time said that in a proper case, in its discretion, it may not do so if it desires more full information than appears in the abstract, and while we do not propose to relax this rule, yet in this particular case we do not see that any great burden is imposed upon the court to examine the bill of exceptions and inspect the photographs which could not be conveniently abstracted.

Our opinion is that the contentions made by appellee in her supplemental brief are without merit, and we will now proceed to review the principal case.

In May, 1901, appellant was operating a freight train which left Minturn and ran eastward to Red Cliff. At Red Cliff four cars and a caboose were left standing on the main track, while the engine went forward in charge of the conductor and two of the brakemen to do the necessary switching. The rear brakeman, an old and supposedly competent employee, was left with the five cars remaining upon the main line.

From Red Cliff to Belden Siding there is a grade, Belden Siding being lower than Red Cliff.

The five cars remained standing on the track from fifteen to twenty-five minutes. After remaining with the cars for a time the rear brakeman left them. While he was absent the cars, for some reason which has not been explained, began to move westward, and being upon or soon reaching a down grade,

they ran with a constantly accelerating speed toward Belden Siding.

At Belden Siding a gang of track men, among whom was Vito Vitello, the husband of appellee, were engaged in removing a mud and rock slide which had come down upon the track from the mountainside, which was quite steep and extended in the neighborhood of fifteen hundred feet above the tracks. The slide had occurred so recently before that, during the time the men were working there, according to one witness, rocks were constantly rolling down the hill. At this point the valley of Eagle river is very narrow. Practically all of the level space between the mountain on one side and the river on the other is occupied by the tracks, which were laid on a curve, the outer or convex side of which was toward the mountain and the inner or concave side toward the river.

The approach of the cars was detected by the track men while they were eight or nine hundred feet distant. The foreman called to his men to leave the track and come down to the edge of the river on the inside of the curve. Some of the men followed his advice and others, including Vitello, started toward the outside of the curve.

Upon reaching the curve two of the cars were derailed, some two or three hundred feet from the men, and the other three, including the caboose, continued to within about one hundred feet of the point at which the men had been working, and there two of them left the track, going toward the outside of the curve. The caboose remained upon the track. These two cars ran along the ground in the neighborhood of one hundred feet and one of them passed the point at which the men were.

When the cars stopped and the track men returned to the point of the wreck, Vito Vitello was

found lying dead between the main track and the side track. The evidence shows that he was injured on top of the head, which was broken. No person appears to know, or at least there was no testimony as to just how this wound was received. No person saw him struck, and the cause of his death was one of the issues in the case.

The appellee, who was Vitello's widow, brought suit against the appellant to recover damages for the death of her husband. The action was brought under the employers' liability act of 1893.

The instructions of the court were, in part, as follows:

"This action is brought under a statute of this state, the first section of which, omitting those parts which are not brought in question here, is as follows:

" 'Where, after the passage of this act, personal injury is caused to an employee, who is himself in the exercise of due care and diligence at the time,

\* \* \*

" ' (3) By reason of the negligence of any person in the service of the employer who has the charge or control of any switch, signal, locomotive engine or train upon a railroad, the employee, or in case the injury results in death, the parties entitled by law to sue and recover for such damages, shall have the same right of compensation and remedy against the employer as if the employee had not been an employee of or in the service of the employer, or engaged in his or its work.'

"It appears from the undisputed evidence in this case that a freight train of the defendant company was run into the station yard at Red Cliff, in this state, on the morning of May 2, 1901; that at said station the engine was detached from the train for use temporarily in the yard there in moving other cars, leaving the cars which it had brought into Red Cliff

station yard, standing upon the main track. The cars so left standing upon the main track were five in number: four freight cars and a caboose or way car. The main track of the defendant company at the place where the said cars were left standing was not level but inclined downward in the direction of the place where the husband of the plaintiff was working as a section man, and it was down grade the whole of the distance between these two points, namely, Red Cliff station yard, where the cars were left standing, and the place where the plaintiff's husband was working, the distance being in the neighborhood of one and one-half or two miles. Some few minutes after the locomotive had been detached at Red Cliff, and while it was in use in another part of the station yard there, the cars left standing upon the main track began to move in the direction of Belden switch. They had attained great velocity as they neared the latter point, and two of the cars left the rails near the place where the plaintiff's husband was working, struck and killed him.

"There are two important questions to be determined by you, both of which must be resolved against the defendant company, to entitle the plaintiff to recover: First, Was the escape of the cars at Red Cliff station caused by the negligence of the defendant or any of its servants? If the first question is resolved by you against the defendant, then it will be your duty to determine, second, whether such negligence was the negligence of a person who had charge or control of the train in question.

"Evidence has been produced before you on behalf of the plaintiff tending to show that it belonged to the conductor of said train to see that proper precautions were taken to prevent the escape of said cars, and if you find from the evidence, by a preponderance thereof, that the conductor of said

train was by the rules and practices of the defendant company charged with such duty, and that he failed in respect thereto, and that by reason of such failure the said cars escaped, then the plaintiff has brought herself within the terms of the statute which I have read to you, and she is entitled to recover, provided her husband was at the time the cars struck him in the exercise of due care and diligence.

"On the other hand, if you find from the evidence that the duty of securing the safety of said cars while standing upon said track at Red Cliff, and the prevention of their escape, rested upon a brakeman, and that the conductor was charged with no duty in respect thereto, then the plaintiff is not within the statute and cannot recover."

After the jury had been considering its verdict for twenty-four hours, in answer to an interrogatory from the court, the foreman stated that the jury stood eleven to one in favor of the plaintiff. Whereupon the court instructed the jury as follows:

"Gentlemen of the jury: I wish to urge upon you the importance of your arriving at a verdict in cases submitted to you. The law has provided that questions of fact shall be decided by a jury. You should consider that in human affairs absolute certainty is seldom to be attained, and not to be expected. Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conculsions of his fellows, yet in order that there may be a result agreed to by all, you must examine questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You are a jury of business men, and should consider that this case must at some time be decided by a jury selected in the same manner that you are. There is no reason to suppose that the case will ever

be submitted to gentlemen more intelligent, more impartial or more competent to decide it, and I wish to impress particularly upon you that we have no reason to suppose that more or clearer evidence will be produced on either side. It is your duty, therefore, to decide the case, if you can conscientiously do so. In conferring together you ought to pay proper respect to the opinions of each other, and listen with a disposition to be convinced by each other's arguments. Proper regard for the judgment of other men will often greatly aid us in forming our own. In many of the relations of life it becomes a duty to yield and conform to the opinions of others when it can be done without a sacrifice of conscientious convictions. More especially is this the duty when we are called on to act with others, and when dissent on our part will defeat all action. The jury room is no place for pride or private opinion or for espousing or maintaining in the spirit of controversy either side of a cause; the single object to be there effected is to arrive at a true verdict, and this can only be done by deliberation and mutual concession and a due deference to the opinions of each other. By such means, and such only, in a body where unanimity is required, can safe and just results be attained, and without them the trial by jury, instead of being an essential aid in the administration of justice, would become a most effectual obstacle to it. These cases, gentlemen, are tried not only at great expense to the state and county but also to the litigants, and I again urge upon you that you are here to decide cases and not to remit them for future juries.''

Over the objection of the defendant the plaintiff was permitted to propound to several so-called expert witnesses the following question: ''Who is

responsible for the proper securing of a train upon the grade?''

The court also permitted plaintiff's expert witnesses to testify how they individually would have acted had they been the conductor of the train, under the circumstances existing in the case upon trial. To the giving of these several instructions and the admission of the testimony in response to the interrogatories just mentioned, the defendant assigned error. The defendant also assigns many other errors the merits of which we do not consider it necessary to determine.

It appears from the instructions that the cause was tried upon the theory that the company is not liable unless the accident occurred because of the negligence of the conductor. The jury finding for the plaintiff under the instructions of the court must have necessarily determined that the accident occurred by reason of the conductor's negligence; while the testimony shows conclusively that if there was any negligence it was that of the brakeman and not that of the conductor. It was the brakeman who had charge of these cars and whose duty it was to protect them. The conductor had performed his duty when he left them in the care of an old trusted employee whose business it was to see that they did not escape. The testimony upon this point is substantially as follows:

Henry Farnum testified: ''The conductor had charge of the train that morning.''

J. Kinney testified: ''Dugan, the brakeman, was a member of the train crew; he was the man that was left with the cars.''

John M. Walker testified: ''It is the custom to release the air and set the hand brakes on heavy grades. The duty devolves upon the brakemen. The conductor and engineer is in charge of the train.

It is his duty to give the instructions. He is the supervising officer. The brakeman is responsible for the proper securing of trains upon a grade. The orders are given to the brakemen by the conductor. The duty of a conductor when a freight train is upon a grade and the engine is detached, is to secure the train. It is the first duty of the brakeman to secure the train. It is his duty to handle the brakes. The brakeman understands as well as the conductor where and when he is required to set the brakes, and the proper performance of his duty would require him to do so. It is the duty of a brakeman left with cars standing on the main track, in the absence of any instructions from the conductor, to set sufficient brakes on those cars to keep them in place. If he was a brakeman he would not require any instructions from the conductor to do so. In my judgment the brakeman is responsible for the safety of those cars.''

G. C. Bovee testified: ''The conductor is the person in charge of the train as such with the locomotive attached to it. I do not say that the conductor is necessarily in charge of the detached cars. He has performed his duty when he has left a competent and experienced brakeman with them. The brakeman is under the conductor. His duties are to set the brakes. His primary duty is to set brakes. He sets brakes without specific orders. It is the duty of such brakeman to set a sufficient number of brakes to keep the cars in place until the conductor returns.''

C. A. Hallowell testified: ''It is the duty of the brakeman under the supervision of the conductor to secure the train. It is the conductor's duty to see that it is done. The conductor has other duties to perform. The brakeman does not wait for instructions before he performs his duty. He sets the brakes without orders from the conductor. It is a brakeman's duty to set sufficient brakes on the cars to keep

them in their place until the return of the locomotive. The brakeman is expected to perform his duty without specific instructions. If the conductor is in one place and a member of his crew is in another, and they are both performing duties at the same time, it would be impossible under such circumstances for the conductor to see at that time whether or not the brakeman had properly performed a given duty. If I were a conductor, I would expect the brakemen to perform their duty without instructions from me, and I would have a right to expect that."

Samuel Dugan, the brakeman who was left in charge, testified: "These cars stood on the track about twenty minutes until they moved off down the track, and during that time the other members of the switching crew were on the other side track. It was my duty to set brakes on the cars left standing on the main track, during the absence of the remainder of the crew. These cars left standing on the track were left in my care. While those cars were standing on the main track I was responsible for their safety there."

All of the witnesses whose names are given above were for the plaintiff. The following were witnesses called by the defendant:

Robert A. Heim testified: "It was the duty of the brakeman to secure the rear of the train; to apply the brakes if necessary, and hold the train at that place. Mr. Dugan was an old employee. It is not the duty of the conductor to see especially that the brakemen set the brakes. After leaving Mr. Dugan in charge of them, the conductor did not need to pay any attention to the safety of the remaining cars that are left upon the main track, if he leaves them in charge of a competent person. If he leaves a man

in charge of these cars, he has fulfilled his duty as regards the safety and protection of the train."

A. H. Butler testified: "Mr. Dugan's duty under the rules of the D. & R. G., when left with those cars standing upon the main track, was to protect the rear of that train. That duty involved the setting of sufficient brakes upon those cars to keep them in place. It was not the duty of the conductor under the rules to direct Mr. Dugan to set any brakes on those cars. It was not his duty to personally see that Mr. Dugan did set any brakes on those cars. Under the circumstances that happened on that morning, the conductor could not stay there and see that they were secured. There are circumstances under which a conductor cannot look after the work of other men. When the conductor leaves on, with and in charge of the cars a competent and experienced brakeman, he has performed his whole duty."

James O. Laswell, the engineer, testified: "It was the duty of Mr. Dugan under the rules to set sufficient brakes on the cars with which he had been left to secure them in their place. It was not the duty of the conductor of that train to instruct him or order him to set any brakes on those cars. It was not the duty of the conductor under the rules to either set any brakes himself, or personally see that Mr. Dugan did so."

F. J. Kohr testified that Brakeman Dugan was left with the caboose and it was his duty to set sufficient brakes on those cars to prevent their running off.

Joseph Madden, the conductor, testified: "I left Dugan with the caboose and cars that were left on the main track, for the purpose of securing the train. These cars were under his care. His duty was to see that the brakes were set. It was his business to be there at the time they ran away."

It will be thus seen that the testimony of the witnesses was practically unanimous that the escape of the cars was occasioned by the negligence of the brakeman and not of the conductor, so that the verdict of the jury was in direct opposition to the instructions of the court and should have been set aside by the trial court. It is true that this court has often said that where there is a substantial conflict in the evidence it is the province of the jury to determine to whom the credit should be given, and that in such cases their verdict will not be disturbed, but a verdict which is but slightly supported by the evidence and manifestly against its weight will not be permitted to stand.

It is always the province of a court of review when the question is properly presented to determine whether the trial court or a jury has misconceived its force and effect and where, as in this case, there is but little or no evidence to support the findings of the jury, and the testimony of the witnesses is practically unanimous against the verdict, it should be set aside.—*Rhode v. Steinmetz*, 25 Colo. 308; *Nix v. The First Nat'l Bank*, 23 Colo. 511; *Mitchell v. Reed et al.*, 16 Colo. 109; *Bachman v. People*, 8 Colo. 472; *Smith v. Ellison*, 6 Colo. App. 207.

We must not be understood as determining that the defendant company was not liable even though the injury was occasioned by the negligence of the brakeman, and that the conductor had performed his full duty. We do not determine that the brakeman may not have been in charge of the train while the conductor was absent performing other duties. This is a question which we do not pass upon. The action was tried upon the theory that if the injury was not occasioned by the negligence of the conductor, then defendant would not be liable, and, as we have seen, the verdict of the jury in this respect

is not supported by the evidence. The evidence shows conclusively that the conductor was not negligent.

In the case of *Caron v. Boston & Albany Railroad Co.,* 164 Mass. 523, which was an action for damages under a statute practically like ours, the court holds that where the accident occurred by reason of the negligence of two brakemen who were not found to be in charge or control of the train, the defendant was not liable. The court says: "By the words 'any person    *    *    *    who has the charge or control' is meant a person who, for the time being at least, has immediate authority to direct the movements and management of the train as a whole, and of the men engaged upon it.    *    *    *    The mere fact that a laborer or brakeman is put in such a position that for the moment he physically controls and directs its movements under the eye of his superior does not of itself constitute him a person 'in charge or control' of the train." The liability, if any exists, must be occasioned by reason of the negligence of him who has the charge or control of the train, and not by a fellow servant.

It is possible that under certain circumstances the company might be liable by reason of the negligence of the brakeman or any other person if for the time being he was in charge or control of the train, even though he was not a conductor or engineer, but inasmuch as the action was not tried in the court below or in this court upon that theory, we do not find it necessary to determine that point.

The court erred in permitting answers to the following question: "Who was responsible for the proper securing of the train upon a grade?" This question was objectionable for two reasons: First, it was the very matter to be determined by the jury and was therefore an invasion of its province. Ques-

tions which call for the opinion of a witness upon the ultimate fact to be tried by the jury are improper. —*Combs v. Agricultural Ditch Co.*, 17 Colo. 154; *Old v. Keener*, 22 Colo. 6; *Smuggler Union M. Co. v. Broderick*, 25 Colo. 16; *Colo. Coal & Iron Co. v. Lamb*, 6 Colo. App. 267.

If it were permissible to call witnesses for the purpose of answering the question which is submitted to the jury, then trials by law would soon become farcical because each of the parties litigant could call to the stand their friends and partisans and inquire of them what the verdict of the jury should be.

This question is objectionable for another reason. It is calling for the opinion of a witness upon a matter which is not a proper subject for expert testimony, and in the same connection we may say that the trial court erred in permitting witnesses to testify as to what they would have done under like circumstances had they been in charge or control of the train or had they been the conductor.

In the case of *Shapter v. Pillar*, 28 Colo. 209, this court said: "When the question at issue involves peculiar skill or the knowledge of a particular science, in which persons instructed by study or experience may be supposed to have more skill or knowledge than the average person, the opinion of an expert thereon may be received. Where the question at issue is such that it would be impossible for a witness to state all of the facts or portray all those matters which created an impression upon his mind, his opinion may be taken. These two rules arise from the necessity of the case. On the other hand, when the facts can be given the jury from which a particular inference can be drawn, which is the one to be determined, and concerning which persons of average ordinary intelligence are capable and competent of determining for themselves, opinion evidence is not admis-

sible.'' The same doctrine is announced in *The Smuggler Union M. Co. v. Broderick,* 25 Colo. 16.

Applying these rules, it is manifest that the opinions of witnesses as to who was responsible for the proper securing of a train upon a grade and as to what they would have done under like circumstances was clearly incompetent. It was the province of the witnesses to state facts and let the jury determine what ought to have been done and who was responsible for not having performed the duty.

Inasmuch as this case must be remanded for new trial, we desire to state that the instruction of the court, as to what appeared from the undisputed evidence in the case, was perhaps too broad. It may be said that under the circumstances the direct cause of Vitello's death was a matter which was fairly disputable and one upon which reasonable minds might disagree. Counsel for appellant in their briefs argue with considerable vehemence that there was no proof that the death was caused by the train or that it was occasioned by the falling of rock from the mountainside. Counsel for appellee, with equal vehemence, argue the reverse. So long as there was a dispute as to that matter, the court should not have instructed the jury that the matter was undisputable.

The court also in its instruction to the jury, after they had been considering their verdict for twenty-four hours, at least went to the extreme of what is permissible.

Trial courts should be extremely cautious in influencing or attempting to influence the minds of the jurors by the reading of lectures as to their duties in relation to particular cases. If there is a matter which should be submitted to the jury, there should be no effort to coerce any one of them. The right of each particular juror is equal to the right of every other member of the panel, and he should not be

induced to render a verdict which does not appeal to his conscience, for fear of offending the court.

For the reasons above assigned the cause will be reversed and remanded for further proceedings.

*Reversed.*

Chief Justice Gabbert and Mr. Justice Goddard concur.