[No. 5229.]
[No. 2850 C. A.]

CROWLEY ET AL., COPARTNERS UNDER NAME OF STAR
LAUNDRY, V. SHEPARD.

1. **Practice in Civil Cases—Replevin—Evidence—Sufficiency—
    Directing Verdict.**

    The evidence in an action of replevin reviewed, and held
to be so manifestly contrary to the verdict as to have made
it the duty of the trial court to set it aside or to have directed
a verdict for plaintiff.—P. 350.

2. **Appellate Practice—Judgment Slightly Supported by Evidence.**

    A judgment which is but slightly supported by the evidence
and manifestly against the weight thereof, cannot be permitted
to stand.—P. 350.

*Appeal from the District Court of El Paso County.*
      *Hon. Louis W. Cunningham, Judge.*

Action by Edwin P. Crowley and Newman C.
Crowley against R. F. Shepard. From a judgment
for defendant, plaintiffs appeal.

*Reversed and remanded.*

Mr. J. F. SANFORD, for appellants.

Mr. L. H. ROUSE, Mr. J. W. SHEAFOR, and Mr.
J. F. JACOBY, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the
court:

This is an action of replevin. The verdict of the
jury was for the defendant. Under the instructions
of the court, the only thing for the jury to determine
was the ownership and the amount of damage sustained by the plaintiffs, if they found the verdict for
the plaintiffs.

Upon the return of the verdict, plaintiffs moved
to set aside the verdict because it was not supported

by the testimony, as well as for other reasons. This motion was overruled, and the case comes here on appeal.

While a number of errors were assigned and have been argued, the only one we shall consider is the refusal of the court to set aside the verdict and grant a new trial on the ground that the verdict was contrary to the evidence and to the law.

The property replevined was a mare, and the question before the jury was as to the identity of the animal.

F. B. Scobey testified that he was an employee of the Star Laundry when run by Mohler Brothers, prior to the time of the present owners; that he used the mare in controversy then; that she was a light brown or dark bay mare with a little white spot on her forehead; that she was one of the horses sold by Mohler to the plaintiffs; that, after plaintiffs had lost her, he saw her in the possession of defendant. He positively identified her as the same animal that he used when working for the Star Laundry, and he went into a minute description of her build and marks. He stated that he could not give the brand but thought it was on the shoulder; he could not read it, as it was very dim. While driving the mare, he had roached her mane so that it was 2½ or 3 inches long. When he quit driving her, he turned her over to Horace Henkle, who testified that he drove the mare and lost her on Sunday, June 1st; that she had a roached mane and short tail. He drove her Saturday, the last of May. He put her in the barn that night, and did not see her again until he saw her in the possession of the defendant six weeks afterwards. He saw the defendant driving her, and recognized the mare at once. When he lost the mare, he went to the city pound and to the police headquarters, described her, and asked them to 'phone the Star Laun-

dry if they found such an animal. He testified that he used the mare every day, and that the one in the possession of defendant was the same animal. He said that, at the time she was lost, her mane was getting long enough "to lop over." He knew nothing about her brand.

Hugh Shelleday, who had been working in the laundry for five years, knew the mare; last saw her but a week before she was lost. The next time he saw her, defendant was driving her, and she was the same mare. He testified that he could positively identify her as the same mare that the plaintiffs had lost. He said the mane had grown out some since it was roached, said some people would call her a light brown and some a dark bay, and that she had some white in her forehead.

The foregoing was all of the testimony on behalf of plaintiffs as to the identity of the animal, except that the witnesses went into minute particulars in describing her, although none of them paid any attention to the brand.

Sherman McNew, a sergeant of the police, testified that some person from the Star Laundry had reported the loss of the mare, and had described her as a little bay mare with a roached mane, but the witness stated that she was a brown mare, and had a small white spot on the head, was branded AB on the left shoulder; that the mane was five to eight inches long. It appears that the City of Colorado Springs kept a record of the animals placed in the pound, and this record shows that the mare taken up by the city and afterwards sold by it was a bay mare, although the city officials, who presumably caused this record to be made, described her as a brown mare.

W. D. Thomas, who was a policeman at this time, testified that he would call the mare a dark brown, with a mane about eight inches long, and a little daub

of white in the forehead, although he testifies she was described in the record as a bay mare.

William Ord, a witness called by defendant, describes the mare as light brown. He states that he could see the brand. He says that some might call her a dark bay, and some would call her brown.

Another policeman, Armstrong, testified that she was a blocky brown mare with mane from eight to ten inches long.

T. J. Fair, who purchased her at the city sale and sold her to the defendant, said that she was a blocky brown mare with mane about eight inches long; that the mane might have been roached at one time, but was about that length when he saw her; it was the same length of mane all the way, clear back to the wethers.

Defendant testified that she was a little, dark-brown mare, branded AB on the left shoulder; that the brand was easily discernible when she was shed off. She was not completely shed at the time he got her, but he curried her a good deal and could notice the brand on the left shoulder.

J. E. Ansel, who appears to have been the agent who sold the mare to defendant, describes her as a brown mare with a few gray hairs in her head; that her mane looked stubby, but wasn't what you would call a roached mane.

That is all the testimony concerning the identity of the animal.

There is testimony showing that the mare had been taken up by the city and sold, and subsequently passed into the hands of defendant by virtue of such sale, but, on account of some defect in the manner of conducting the sale, the court instructed the jury to disregard it, and, as heretofore stated, submitted to it simply the question of the identity of the animal.

We have here three disinterested witnesses who positively identify this mare as the plaintiff's property. There is no witness that says she was not the property of plaintiffs. It is sought to avoid the force of the testimony of plaintiffs' witnesses by calling members of the police force who conducted the sale, and the man who purchased the mare at the sale and subsequently sold her to the defendant, to prove by them that it was a brown mare instead of a dark bay and that the mane was longer than described by plaintiffs' witnesses, and that this mare was branded AB. This does not make such a conflict in the testimony as to the identity of the animal as to warrant the jury in disregarding the testimony of the three men who had used her, were well acquainted with her and positively identified her. We all know when it is daylight, and we likewise know when it is dark; it is difficult to determine when daylight ceases and darkness sets in. Most men know when a horse is of the color known as bay and when a horse is of the color called brown, but when an animal is of that peculiar color which forms the connecting link between bay and brown, it is not remarkable that some would describe it as dark bay and others as brown, and in this particular case, we have the same officers who made the record in the police court, wherein they called the animal a bay, testifying at the trial that she was brown. So with the description as to the length of the mane: Some time previous to the escape of the mare from the plaintiffs, her mane had been roached. At the time she escaped, it had grown out so that it fell a little to one side. Defendant's witnesses testified that it was all the way from five to eight inches long. Some of them also say that the mane might have been roached. It is not remarkable that the testimony should vary a little as to its exact length.

The verdict in this case being so manifestly against the weight of the testimony, the court should have set it aside or, what would have been still better, it should have directed the jury to find a verdict for the plaintiff, and instructed them only to determine the question of the value of the animal and the damage for her taking.

A judgment which is but slightly supported by the evidence and manifestly against the weight thereof, cannot be permitted to stand.—*Brinker v. Ry. Co.,* 11 Colo. App. 166; *Nix v. Bank,* 23 Colo. 511.

The judgment of the district court will be reversed, and the cause remanded.      *Reversed.*

Chief Justice Gabbert and Mr. Justice Goddard concur.