[No. 7798.]

THURINGER, ADMINISTRATOR V. TRAFTON ET AL.

1. FRAUDULENT CONVEYANCES—*Who is a Creditor.* One who has sustained a personal injury by the negligence or misconduct of another is a creditor of the offending party, within the meaning of Rev. Stat. Sec. 2671, even though his claim has not been reduced to judgment. (253)

2. HUSBAND AND WIFE—*Conveyances Between—Presumptions.* Where a debtor conveys lands to his wife when he is insolvent, or by the transfer is made insolvent, and the conveyance is assailed by a creditor, the husband and wife have the burden to establish by a clear and satisfactory proof that the conveyance was for a valuable consideration, and without intent to hinder, delay or defraud the creditors. General statements of the wife that her money purchased the land in question, without reference to any record or source of information by which they may be verified, will not suffice. As against a creditor the law will not uphold a conveyance by an indebted husband to his wife, where the transaction is shrouded in mystery and doubt. The evidence examined and held entirely insufficient to support the conveyance. (254, 256)

3. APPEAL AND ERROR—*Findings manifestly against the Weight of Evidence* will be set aside. (254)

4. ——*Findings On Conflicting Evidence,* are not controlling upon the court of review, where the conflict is internal in the evidence of the successful party, and not between that and the testimony of any other witness. (255, 256)

*Error to Arapahoe District Court.*—Hon. CHARLES McCALL, Judge.

Messrs. MELVILLE, SACKETT & CALVERT, for plaintiff in error.

Messrs. CRUMP & ALLEN, for defendants in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

STATEMENT OF THE CASE.—September 8, 1908, defendant in error, Edwin B. Trafton, sold a tract of land in Idaho upon which he and his wife had resided fifteen years, for $4,500.00 cash, and on the same day he and his wife left for Denver, where they arrived on the 12th. On the 14th of September, 1908, he deposited to his credit in the Denver National Bank, an Idaho bank draft for $4,275.00, which he had purchased with the proceeds of the sale, which was the only deposit he made in that bank. Soon after his arrival in Denver, he purchased two tracts of real estate, one in Denver, the other in Arapahoe county, paying for the latter with a check drawn against the account in the Denver bank, both deeds being taken in his name and recorded.

November 23, 1908, John Thuringer was seriously injured by an automobile driven by Edwin B. Trafton, and a few days later his son visited the Trafton home at Littleton for the purpose of adjusting the damages to his father caused by the injuries, but finding no one at home returned to Denver, and on the way met Trafton's wife. The conversation with her which followed being unsatisfactory to him, he told her that an action for damages would be instituted. December 4, 1908 Trafton deeded both tracts of land to his wife, gave a bill of sale of his automobile to his mother, withdrew his balance amounting to $1,760.00 from the Denver bank, and opened an account in the Englewood bank in his wife's name, which he checked against as her agent; thus disposing of all his property.

December 24, 1908, suit was commenced by John Thuringer against Edwin B. Trafton who told the officer serving the summons that he would not defend the suit; that if they thought they could get anything out of him, to go to it, they were welcome to all they could get; that he was pretty smart and could take care of himself. Mrs. Trafton heard this conversation. Thuringer obtained judgment against Trafton for $2,500.00, and thereafter such proceedings were had that the lands deeded by Trafton to his wife were sold upon execution to satisfy this judgment, Thuringer being the purchaser and in due time receiving and recording sheriff's deeds to the property. Trafton told the officer who made the levy he was only wasting his time, that the property had already been taken care of.

This action was brought July 23, 1910 by Minnie E. Trafton to remove the cloud caused by the sheriff's deeds, from her recorded warranty deed title, and on motion of Thuringer, Edwin B. Trafton was made a party, who, Thuringer alleged in his cross complaint to be the real owner of the lands in controversy; further alleging that he had voluntarily, without consideration, and with a view of concealing the title and to hinder, delay and defraud creditors, conveyed the property to his wife, which conveyances were sham and fictitious, all of which she well knew. He asked that the deeds made by Trafton be declared fraudulent and void, that he be declared to be the real owner of the property and that a decree be entered for its conveyance to Thuringer.

The trial was to the court without a jury, and on March 15, 1912, it found plaintiff, Minnie E. Trafton, to be the owner in fee simple of the land in controversy; that defendant's cross-bill was without merit; that the sheriff's deeds to Thuringer were void and a cloud upon plaintiff's title; that defendant had wholly failed to sus-

tain the allegations of fraud; it cancelled the sheriff's deeds, and decreed plaintiff to be the owner of the premises. To review this judgment, Thuringer's representatives brings the case here on error.

1.   The Law.—The simple fact that plaintiff in error had not reduced his cause of action to judgment before Trafton made the transfers to his wife, is immaterial. At that time he was a creditor within the meaning of section 2671, R. S., which provides in substance that every conveyance of any interest in land made with intent to hinder, delay or defraud creditors, shall be void. The object of this statute is to protect creditors, and it makes no difference whether their claims have been reduced to judgment or not, at the time of the conveyance.—*Gregory v. Filbeck,* 12 Colo. 379, 21 Pac. 489; *Mulock v. Wilson,* 19 Colo. 296, 35 Pac. 532; *Fahey v. Fahey,* 43 Colo. 354, 96 Pac. 251, 18 L. R. A. (N. S.) 1147, 127 Am. St. Rep. 118; *House v. Johnston,* 19 Colo. App. 524, 76 Pac. 743; *Lowentrout v. Campbell,* 130 Ill. 503, 22 N. E. 744.

2.   In our state husband and wife may each own property just as separate and distinct from the other, as they could if not married, may conduct business transactions concerning it, and make conveyances, one to the other, the same as if dealing with third persons. But the relationship between them is so intimate and confidential that when a debtor conveys property to his wife when he is insolvent, or if the transfer will render him insolvent, or prevent creditors from collecting their claims, and the conveyance is impeached or attacked by creditors, then the husband and wife are obliged to establish on the trial by clear and satisfactory evidence; the honesty of the transaction; that it was made in good faith for a valuable consideration and without intent to ·hinder, delay or defraud creditors. If they fail to do

this, the conveyance will be set aside.—*Helm v. Brewster,* 42 Colo. 25, 93 Pac. 1101; *Tibbets v. Terrill,* 44 Colo. 94, 96 Pac. 978, 104 Pac. 605; *First Nat. Bank v. Kavanagh,* 7 Colo. App. 160, 43 Pac. 217.

3. The finding of a trial court is not necessarily binding on a court of review when it clearly appears from the whole record that such finding is wrong. The power of a court of review ought not to be left paralyzed so as to prevent a miscarrage of justice, merely by the erroneous findings of a trial court or the verdict of a jury. We have never refused to set aside such a verdict or finding when it is manifestly against the weight of the evidence and would result in a miscarriage of justice. —*Petite v. People,* 8 Colo. 518, 9 Pac. 622; *Caldwell v. Willey,* 16 Colo. 169, 26 Pac. 161; *Nix v. First Nat. Bank,* 23 Colo. 511, 48 Pac. 522; *Rhode v. Steinmetz,* 25 Colo. 308, 55 Pac. 814; *D. & R. G. Co. v. Peterson,* 30 Colo. 77, 69 Pac. 578, 97 Am. St. Rep. 76; *D. & R. G. Co. v. Vitello,* 34 Colo. 50, 81 Pac. 766; *Shulze v. Shea,* 37 Colo. 337, 86 Pac. 117; *Rankin v. Cardillo,* 38 Colo. 216, 88 Pac. 170; *Wachsmuth v. Heil,* 1 Colo. App. 196, 28 Pac. 17; *Abbott v. Smith,* 3 Colo. App. 264, 32 Pac. 843; *Lamar Co. v. Craddock,* 5 Colo. App. 203, 37 Pac. 950; *Smith v. Ellison,* 6 Colo. App. 207, 40 Pac. 502; *Brinker v. U. P., D. & G. Ry. Co.,* 11 Colo. App. 166, 55 Pac. 207.

4. Conclusion.—Tested by the foregoing rules, the court's finding was unwarranted and cannot be sustained. It should have found the deeds from Trafton to his wife void, cancelled them and entered a decree in accordance with the prayer of the cross complaint. The question is whether the property belonged to Edwin B. Trafton and was conveyed to his wife for the purpose of defrauding creditors. Love and affection as a consideration, or gift, is not involved. She claims her money purchased the premises; that he conveyed the Denver

property to her in payment of a loan; that she purchased the Arapahoe county property and paid for it herself, and her husband in transacting the business took and recorded the deed without her knowledge, in his name. The evidence shows that the owner of the Arapahoe county property sold it to Mr. Trafton, who paid the purchase price with a check drawn on his account at the Denver National Bank, and that he paid for both pieces of property and took and recorded the deeds in his own name. As soon as he was threatened with litigation, he conveyed the property to his wife and disposed of all his property. At any rate, from every standpoint in the case there was sufficient evidence to cast upon her the burden of showing the honesty and good faith of the transfers, and that the transaction between them was free from fraud. They well understood, and assumed the burden of this responsibility by attempting to show when, how and where she obtained the money. She was the only witness who testified on this point, and her evidence conflicts with that of no other witness in this regard. Her bald and general statements to the effect that her money purchased the premises are not controlling or binding and conclusive on the court. Before she has sustained this burden, the whole of her testimony fairly considered must show that her money purchased the properties. She studiously avoided reference to any record by which the accuracy of her general statements might be verified. Fair and honest business transactions usually are easily traced, and the law will not uphold a conveyance to his wife when it is attacked by creditors of an insolvent husband, which is shrouded in doubt, mystery and uncertainty. True, her evidence was conflicting, but the conflict was internal—within itself and not with that of any other witness, for no other witness testified on the subject, and the rule in regard to

conflicting evidence does not apply in such a case.—*Bach-man v. People,* 8 Colo. 472, 9 Pac. 42; *Lawrence v. Weir,* 3 Colo. App. 401, 33 Pac. 646.

We have considered the whole record with unusual care. The wife's testimony is voluminous, and we can only briefly outline it: From May, 1898 to September, 1908, inclusive, she and her husband lived on the tract of land in Idaho which he sold for $4,500. During the spring of each year she boarded sheep shearers, and put the money so earned, away in the bottom of an ordinary trunk in the house, instead of depositing it in a bank, and when they started for Denver, the accumulations amounted to $8,000.00; from this money she paid for the Colorado properties. She understood when she married Trafton, that he had served a term in the Idaho penitentiary, was a gambler, a drunkard, ran after other women, and never worked or earned a dollar. She fed and clothed him, paid all the bills, and out of the proceeds of her business kept him in spending money. In 1900 he was again sentenced to the Idaho penitentiary for two years upon a charge of grand larceny, and she spent from her earnings over $700.00 in his defense. At one place she says her husband did not know this money was cached in the trunk, and at another that he knew all about, and had free access to it. She hoarded money for eleven years in a trunk because she was afraid of banks, and yet, during the two years he was in the penitentiary she conducted all the business and says she kept her account at a bank. After coming to Denver, she furnishd her husband the money with which he opened the account at the Englewood bank in her name; but because she was afraid of banks, she kept $7,500.00 secreted in a trunk. Her husband, when they left Idaho purchased a bank draft for $4,275.00, but she put her $7,500.00 in a hand satchel and carried it to Denver.

Her method of expending the money is even more astonishing than her accumulation of it. When they started for Colorado she gave her husband $500.00 of her $8,000.00, for expense money, notwithstanding he had retained $225.00 out of the proceeds of the land sale. On reaching Denver, they stopped for sometime at a hotel, and she paid all the expenses, still transacting the business, whatever it was. From September 14, to November 20, 1908, she gave her husband out of the $7,500.00 hoarded in the trunk, $5,500.00 which he spent on drink, gambling and women, which she knew he would do when she gave it to him. November 19, 1908, she went into the chiropodist and clairvoyancy business out of which, besides maintaining herself and husband, and paying all expenses, she made enough to pay $1,050.00 for an automobile, gave her husband $2,070.00 to deposit, and paid $800.00 on a rooming house. These accomplishments for obtaining easy money were suddenly dispelled by each being sentenced to the Colorado penitentiary for a term of two years for working a confidence game.

Her evidence is so transparent, inconsistent, improbable, contradictory and unbelievable, that the trial court was not warranted in finding she had sustained the burden of proof of showing the good faith and honesty of the transaction. The judgment is reversed and the cause remanded with directions to the lower court to enter a decree in favor of the defendant in accordance with the prayer of the cross complaint.

*Reversed.*

Chief Justice Musser and Mr. Justice Scott concur.