## No. 9121.

### CHALUPA, ET AL. *v.* PRESTON.

1. FRAUDULENT CONVEYANCE—*Relief of Creditor.* A creditor may assail a conveyance made in fraud of creditors, without first recovering judgment upon his demand.
2. —— *Evidence—Burden of Proof.* In a transaction between relatives or those connected in marriage, the parties thereto have the burden of establishing its innocence and integrity. The evidence examined and held to establish that the conveyance assailed was without consideration and with fraudulent intent.

*Error to Denver District Court, Hon. George W. Allen, Judge.*

Mr. GEO. B. CAMPBELL, for plaintiffs in error.

Mr. EWING ROBINSON, Mr. DELPH E. CARPENTER, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

The complaint in this case alleged that the plaintiff Burton Preston, obtained a judgment against the defendant Joseph S. Knotek, on the 8th day of December, 1914, in the sum of $3,481.00 and costs. That on the 17th day of February, 1915, a transcript of said judgment was filed for record with the County Clerk and Recorder of the city and county of Denver, where the defendant resided. That prior thereto, and on the 14th day of December, 1914, exe-

cution on said judgment was issued, directed to the sheriff of Morgan county, and on February 27th, 1915, return made that the judgment was unsatisfied, except to the extent of $2,000, and that after diligent search by the officer, no other property than that sold to obtain the said sum of $2,000 was found upon which to levy. That on February 9th, 1915, execution was issued directed to the sheriff of the city and county of Denver to satisfy the remainder due on said judgment in the sum of $1,516.44 and returned wholly unsatisfied, and no property found.

That on November 22nd, 1914, and subsequent to the commencement of the action in which said judgment was obtained the defendant Knotek conveyed, by three separate warranty deeds, three certain pieces of real estate situated in the city and county of Denver, and described in the complaint, to his brother-in-law, Harry Chalupa.

That these deeds were without consideration, and with the intent and purpose to hinder, delay and defeat the plaintiff in the collection of his judgment, and were received by the grantor with full knowledge of such intent.

Further, that Knotek has no other property within the state of Colorado from which plaintiff can realize his judgment.

It was further alleged that there has been no change of possession of said properties, but that Knotek continues in possession of the same, to reside in one, and to collect the rent from others, to pay the taxes, and to treat the same as his own. Prayer was for the cancellation of said deeds, and for foreclosure of the judgment lien.

Separate answers were filed in behalf of Knotek and Chalupa which in substance, admit the judgment, admit the sale under execution, but allege a subsequent execution and sale thereunder, from which there was realized more than $2,000, and declaring that there was not to exceed the sum of $1,000 due on said judgment. Admit the conveyances and allege them to be in good faith, and that Chalupa is the bona fide owner of the properties for consideration.

It appears that the original cause of action arose upon a promissory note secured by mortgage upon the premises in Morgan county, afterward sold under execution. That in the purchase of the premises, Knotek had assumed and agreed to pay the indebtedness secured by the mortgage, but suit was brought on the note, and a levy made on the land. It also appears that the court set aside the first execution sale, and the property was sold under a second execution, and the court in this trial found there was still due the plaintiff the sum of $1,186.80.

The trial court found for the plaintiff in this case, adjudged the conveyances to be null and void, and held the plaintiff entitled to a lien on said premises for the amount due and unpaid on the judgment, and directed execution and sale of the premises as the property of Knotek.

The errors assigned and important to consider are that equity will not lie in this case, in that plaintiff had not exhausted his remedy at law; and that the evidence was insufficient to justify the finding of the court that the conveyances were made with the intent to hinder, delay and defraud the creditors of Knotek.

It is contended that the original judgment was against Chalupa and another, as well as against Knotek, and that execution should have been issued against these with a return of no property found, before the plaintiff was entitled to equitable relief, and authorities are cited from some other states which seem to support this contention.

But the law upon this question may be regarded as well settled in this jurisdiction. *Stockgrowers Bank v. Newton,* 13 Colo. 245, 22 Pac. 444; *Schofield v. Ute, etc., Co.,* 92 Fed. 269, 34 C. C. A. 334, involving a Colorado case; *Allen v. Tritch,* 5 Colo. 222; *Emery v. Yount,* 7 Colo. 107, 1 Pac. 686; *Mulock v. Wilson,* 19 Colo. 296, 35 Pac. 532; *Helm v. Brewster,* 42 Colo. 25, 93 Pac. 1101; *Thuringer v. Trafton,* 58 Colo. 250, 144 Pac. 866.

In *Allen v. Tritch, supra,* it was said:

"The right of a judgment creditor to equitable relief in case of the fraudulent transfer of real estate by the judgment debtor is well settled. He may maintain his action to cancel the fraudulent conveyance before execution."

In *Stockgrowers Bank v. Newton, supra,* it was held:

"A judgment creditor desiring to set aside a supposed fraudulent deed of real estate may bring his action therefor to test the validity of the deed, before attempting to subject the premises to execution sale; or the purchaser, after such sale, may bring his action to remove the cloud from the title by canceling the supposed fraudulent deed, and to recover possession of the premises."

It will be observed that the judgment lien in this case had attached to the real estate of Knotek in the City and County of Denver, by the filing of a transcript of judgment with the Clerk and Recorder of that county, before the institution of this suit.

The rule is well stated in *Schofield v. Ute, etc., Co., supra,* pointing out the two classes of cases of the character in which equity may be invoked. It was there said:

"But there are two classes of cases in which a judgment creditor may successfully invoke the aid of a chancellor because his remedy is insufficient.

One class includes the cases in which his remedy at law is utterly ineffectual to reach the property of his debtor, or to fasten any lien or claim upon it, as where a creditor's bill is exhibited to reach choses in action, equitable interests, or property of the judgment debtor that has been fraudulently conveyed beyond the reach of the judgment and execution.

The other class embraces those cases in which the creditor has secured a lien or right at law, the enforcement of which is obstructed by some fraudulent conveyance or incumbrance. * * *

In the second class of cases to which we have adverted, however, the lien or vested right in the property, and the

fraudulent obstruction to the adequate enforcement of this lien, or right, are the only essentials to the jurisdiction of a court of equity. Equity relieves, not, as in the former class, because the remedy at law has created no lien and has no effect, but because the enforcement of the lien secured by the legal remedy is rendered so much less efficient by the fraudulent obstruction that it is inadequate. It is the inadequacy, and not the utter futility, of the remedy at law, which conditions the jurisdiction in this class of cases; and the return of an execution unsatisfied is neither the sole nor the best evidence of this inadequacy. In many cases this inadequacy cannot be shown at all by the return of the execution because it is possible to levy the same upon the property upon which the lien is fastened, and to sell the property thereunder, notwithstanding the fraudulent incumbrance or conveyance. The difficulty is that the fraudulent mortgage, trust deed, or other obstruction compels the purchaser under the execution to buy a lawsuit, and so depreciates the value of the property at the sale that the creditor's remedy is rendered insufficient, and sometimes without any practical value. In such case, he is not required to proceed with this sale, and thus sacrifice both his own interest and that of his debtor, but he may successfully appeal to equity to remove the fraudulent obstruction before he proceeds with the sale. *Bank v. Newton,* 13 Colo. 249, 250, 22 Pac. 444, and cases there cited. * * *

Under the statutes of Colorado * * * the lien of a judgment attaches to the real estate of the debtor when the judgment, or a transcript of it, is recorded or filed in the proper office in the county where the land is situated. * * *

The levy of an execution upon it could not make this lien more specific or more efficient, and the conclusion is irresistible that the general lien upon the real estate created by entering a judgment or filing a transcript of it in the county where the lands of the debtor are situated, in accordance with the statutes which provide therefor, is a sufficient basis for the maintenance of a suit in equity to

remove a fraudulent obstruction to the enforcement of that lien."

And again in *Thuringer v. Trafton, supra,* it was held:

"The simple fact that plaintiff in error had not reduced his cause of action to judgment before Trafton made the transfers to his wife, is immaterial. At the time he was a creditor within the meaning of section 2671, R. S., which provides in substance that every conveyance of any interest in land made with intent to hinder, delay or defraud creditors, shall be void. The object of this statute is to protect creditors, and it makes no difference whether their claims have been reduced to judgment or not, at the time of the conveyance."

As to the sufficiency of the evidence upon which the court based its finding that the deeds were void as being for the fraudulent purpose of hindering and delaying the creditor, it appears that Chalupa was a sort of a "Will O' the Wisp," character. We discover no evidence of his existence in the record, save the testimony of Knotek. He testifies that Chalupa is his brother-in-law, that he came to Denver in the winter before the execution of the deeds; that he was a common laborer and worked at different occupations after coming to Denver.

He could not be found for personal service in this suit. Service was made on him by publication. An answer was filed for him by counsel. Diligent effort was made by the plaintiff to secure service of subpoena on the trial. Knotek was called upon to ascertain his whereabouts, but said he could give no information in that regard.

The consideration for the conveyances; as testified to by Knotek was $800.00 in cash; a deed for a tract of land in Oklahoma, and 5,000 shares of the capital stock in a mining corporation.

Of the cash item Knotek says, I left in my house until I used it up, left it upstairs in my room. I left it under my pillow when I wasn't using it. I kept it in the bed until I used it up. No other witness testifies as to the existence of any such money.

The certificate of stock was for 5,000 shares of the capital stock of the Adams Copper Mining & Refining Co. The proof shows that the certificate was issued in a name other than either Chalupa or Knotek. That at the time Knotek says he received it, the corporation was defunct. Knotek testifies "I made no investigation as to what the assets of the corporation were worth. Did not counsel with any of the officers of the company. I didn't ascertain whether the company had an office in Denver or not, or whether the company had paid any dividends. Did not investigate as to whether or not the company was a going concern. Did not make any investigation as to the value of this stock."

As to the deed for the Oklahoma land Knotek testified in substance, "Don't know from whom Chalupa obtained it. Did not investigate at the time. It was an open deed. The grantee was not filled in. It passed by mere delivery from one person to another. I did not investigate the title. I made no investigation—did not go to look at the land—did not write about it. I made no investigation whatever either as to Ferguson the grantor, or as to the land, or any detail regarding it."

The proof shows that the title to the land had passed from the grantor to a third person before Knotek says he received the deed. The deed was simply so called "traders deed" executed in Nebraska for land located in Oklahoma.

Witness Roberts, who at one time owned the Morgan county land and had assumed and agreed to pay the debt thereon, and was a defendant in the original suit, testified that he went to see Knotek after the institution of the suit, and that Knotek told him that he was all right, and that he had his property or affairs so fixed that it didn't worry him. He was jubilant, laughed over it and said he was so fixed that it didn't worry him. The proof also shows that there was no change of possession of the premises. That Knotek continued to live in the one house, and to collect rent from the other. That he paid the taxes though he says he made settlement with Chalupa, but offers no corroborative evidence.

It is a rule in the case of such transactions between relatives, that the burden of proof, is on the parties to the transfer to clearly establish, that the transaction was honest. In the case of *Helm v. Brewster,* 42 Colo. 25, 93 Pac. 1101, it was said:

"Many decisions of courts of last resort in actions by creditors of a husband to set aside conveyances of property to his wife are reported, with the result that in this class of cases it has been firmly established that when a conveyance by an insolvent debtor to his wife is attacked by a creditor of the former at the time of such conveyance, the husband and wife are required to clearly establish that the transaction was honest, and that there was no intent to hinder and defraud such creditor."

The same principle is applicable as to transactions between relatives other than husband and wife. *Greig v. Jones,* 66 S. C. 171, 44 S. E. 729; *Kerr v. Kennedy,* 119 Ia. 239, 93 N. W. 353.

The court had the witnesses before him and was the judge of their credibility. We think the court was entirely justified in finding that the conveyances by Knotek were made with the fraudulent intent and purpose of delaying and hindering his creditors.

The judgment is affirmed.

Hill, C. J., and Garrigues, J., concur.