## No. 11,563.

### Myers v. Hayden.

Decided May 31, 1927. Rehearing denied July 5, 1927.

Action to quiet title. Judgment for plaintiff.

*Reversed.*

1. Deed—*Notice.* Under the facts disclosed, a judgment creditor is held to have had notice of an unrecorded deed conveying property of the debtor to his daughter.

2. Pleading—*Object.* The object of pleading is to inform the adverse party of the cause of action or defense relied upon by the pleader so that he may have an opportunity to meet it on the trial.

3. Evidence—*Notice—Unrecorded Deed.* The contention that evidence of notice of an unrecorded deed was improperly admitted because notice was not affirmatively alleged in the complaint, overruled, it appearing that want of notice was set out in the answer and put in issue by the reply of plaintiff.

4. PLEADING—*Answer.* An allegation that the pleader had not, and could not obtain sufficient knowledge or information upon which to base a belief, is a form of denial permissible under the Colorado Code.

5. APPEAL AND ERROR—*Harmless Error.* Defects in pleadings or errors in the admission of evidence, if not prejudicial to the complaining party, will not justify a reversal of the judgment.

6. FRAUDULENT CONVEYANCES—*Burden of Proof.* In an action involving an alleged fraudulent conveyance from father to daughter, the burden was on the daughter to establish by clear and satisfactory proof that the transaction was honest and that there was no intent to defraud creditors.

7. *Burden of Proof.* In an action involving an alleged fraudulent transfer of realty, the grantee of a deed from her father held not to have sustained the burden of proof that the transaction was without intent to defraud the father's creditors.

8. *Solvency of Grantor—Burden.* In an action involving an alleged fraudulent real estate transfer from father to daughter, grantee has the burden of proving that the grantor was solvent; that is, that the transfer would not render him insolvent.

9. APPEAL AND ERROR—*Findings.* A finding of the trial court is not necessarily binding on a court of review where it clearly appears that it is not supported by the evidence.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Sackmann, Judge.*

Mr. A. J. BRYANT, Mr. J. M. TAYLOR, for plaintiff in error.

Mr. J. W. KELLEY, Mr. J. D. KELLEY, Mr. L. J. CROWLEY, Mr. W. R. RAMSEY, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE plaintiff in error, one of the defendants below, seeks the reversal of a decree removing from the title to

certain city lots a cloud created by the filing of a transcript of a judgment in his favor and the levy of an execution; quieting title in the defendant in error Esther V. Hayden, who was the plaintiff below; and restraining the sale of the property under the execution. Defendant in error Hershey, as ex-officio sheriff, was joined with Myers as a defendant in the lower court. The plaintiff in error will be referred to as Myers; the defendant in error Esther V. Hayden, as Esther; and her father, D. J. Hayden, as Hayden.

On October 14, 1919, Myers obtained a judgment in Oklahoma against Hayden, and on December 16, 1919, he brought in the district court at Denver a suit on the Oklahoma judgment. Some time prior to January 22, 1920, Hayden conveyed to his wife, Myrtle Hayden, Denver property referred to as the St. Paul street property; and on January 22, 1920, which was shortly before the death of Mrs. Hayden, she conveyed the property to their daughter, Esther. On October 21, 1922, the property was sold, and the proceeds were invested in the property involved in this suit and referred to as the Race street property. Title to this property was taken in the name of Hayden, who executed a mortgage thereon to secure $5,000 loaned by a Mrs. Hill, which amount, together with the proceeds of the sale of the St. Paul street property ($7,500), made up the purchase price ($12,500). On the 11th day of June, 1923, a deed, dated May 7, 1923, signed by Hayden, and conveying the Race street property to Esther, was acknowledged. On June 12 Hayden mailed the deed to Esther in California. On October 30, 1923, Myers obtained a judgment for $555.58 in the Denver suit, and a transcript of the judgment was filed with the clerk and recorder on November 7, 1923. Twelve days thereafter (on November 19) there was filed for record Hayden's deed to Esther. On October 4, 1924, Myers caused execution to be levied on the Race street property as the property of Hayden. On April 3, 1925, Esther commenced this suit.

1. Did Myers, at the time he filed for record the transcript of his judgment, have knowledge or notice of the unrecorded deed given by Hayden to Esther? If he did not have such knowledge or notice, the lien of his judgment would have priority over the deed, and he would be entitled to judgment, even though we should find that Esther was a bona fide purchaser. The transcript of judgment was filed for record before the deed was filed. The recording act (C. L. sec. 4902) provides: "All deeds * * * of * * * real estate * * * may be recorded in the office of the recorder * * *, and from and after the filing thereof for record * * * and not before, such deeds * * * shall take effect as to subsequent bona fide purchasers and incumbrancers by mortgage, judgment or otherwise not having notice thereof."

The trial court found that Myers, prior to the filing of the transcript of his judgment, had notice of the unrecorded deed. The evidence sustains the finding. On June 6, 1923, after the deed was signed, but before it was acknowledged and delivered, Hayden, according to his testimony, mailed to Myers a letter, enclosed in an envelope properly addressed and stamped, informing Myers that Esther had Hayden buy the property for her; that he took title in his name, as she was in California and could not sign the mortgage papers; that he (Hayden) had deeded the property to her, and that he never was the owner. A copy of this letter is in evidence. Hayden also swore that this letter was the only letter that he ever wrote to Myers. Myers testified that he never received the letter; but the witness Winegarden testified that in the latter part of June, 1923, he conversed with Myers in Oklahoma, and that Myers stated that he had received a letter from Hayden, stating that he (Hayden) had deeded all of his property to Esther, but that he (Myers) was going to collect the judgment just the same. This testimony was not contradicted.

The court found the date of the acknowledgment of the deed to be the 4th, rather than the 11th; but in this the court was in error. The certificate of acknowledgment is before us. The word "June" had been written in the blank space intended for the day of the month. The word "June" was then partially erased and "11th" written in its place. "June" is still clearly discernible. Hayden testified that he acknowledged the deed on the 11th, and that he sent the deed to Esther on June 12, "just after it was acknowledged." Hayden's letter of the 6th of June, was written after the deed was drawn and signed, and was sufficient to put Myers upon notice.

2. Myers contends that the evidence of notice was inadmissible under the pleadings; that notice must be affirmatively alleged in order to admit proof thereof, and that there is no such allegation in the pleadings. In *Home State Bank v. Hunkey,* 63 Colo. 231, 165 Pac. 987, in an opinion by Mr. Justice Scott, we adopted as the law the following language of the trial court: "* * * by reason of the recording acts, a second mortgage, if first recorded, is in law given preference over a prior unrecorded mortgage; the law raises the presumption that the second, if first recorded, was given in good faith, for valuable consideration and without notice of prior equities."

Assuming that the law cast upon Esther the burden of alleging that Myers had notice of the unrecorded deed, is her failure to make such an allegation fatal to the judgment in her favor? The object of pleading is to inform the adverse party of the cause of action or defense relied upon by the pleader, so that he may have an opportunity to meet and defeat it, if possible, upon the trial. *Soden v. Murphy,* 42 Colo. 352, 94 Pac. 353. In pleading the priority of his judgment, Myers alleged that at the time of filing the transcript thereof he had no knowledge or notice of any deed from Hayden to Esther. As to the matter thus pleaded, Esther alleged that she had not and could not obtain sufficient knowledge or information upon

which to base a belief—a form of denial that is permissible where the matter denied is not presumptively within the knowledge of the one making such denial. *Adams v. Clark*, 36 Colo. 65, 85 Pac. 642, 10 Ann. Cas. 774. If Myers had not specifically pleaded want of notice, he would not have been informed by the pleadings that he would have to meet that issue at the trial; and without an amendment, and a continuance if Myers were surprised and needed time to enable him to prepare to meet the issue, it would have been prejudicial error to admit evidence of notice. Whether or not it was necessary for him to plead that he had no notice of the unrecorded deed, Myers did plead it, and the allegation was denied in a manner permitted by our practice. It would be absurd to say—indeed, Myers does not claim—that he did not know that the question of notice was to be tried. That he labored under no mistake with reference thereto, is shown by the fact that three months before the trial Myers gave his own deposition on this very question of notice, and took his brother's deposition on the same question. Both depositions were introduced in evidence at the trial. At the trial Myers did not suggest that he was taken by surprise. The issue was tried, and no intimation was given that he was laboring under any disadvantage. The objection made was solely the technical one urged here. Esther assumed the burden of proving that Myers had notice of her unrecorded deed, and she proved that fact to the satisfaction of the trial court. Assuming that her pleadings are defective, and that because of that fact the court erred in admitting her evidence of notice, such defect and such error did not prejudice the substantial rights of Myers. Our Code (sec. 84) provides: "The court shall in every stage of an action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or. defect." Courts are more and more inclined to look to substance rather than to form. This assignment of error is without merit.

3.  Myers attacks as fraudulent the conveyance of the Race street property by Hayden to Esther. In his counterclaim, Myers alleged that the conveyance was made with intent to hinder, delay and defraud Hayden's creditors, and particularly Myers; that it was without consideration; that Esther received the conveyance with full knowledge of such fraudulent intent; and that the conveyance was in trust for the sole use and benefit of Hayden. These allegations were denied by Esther. The conveyance being from father to daughter, the burden was on the daughter (Esther) to establish by clear and satisfactory proof that the transaction was honest, and that there was no intent to defraud creditors. *Helm v. Brewster,* 42 Colo. 25, 93 Pac. 1101; *Tibbetts v. Terrill,* 44 Colo. 94, 96 Pac. 978, 104 Pac. 605; *Thuringer v. Trafton,* 58 Colo. 250, 144 Pac. 866; *Chalupa v. Preston,* 65 Colo. 400, 177 Pac. 965; *Greenlee v. Owens,* 74 Colo. 225, 220 Pac. 496; *First National Bank v. Roper,* 78 Colo. 1, 238 Pac. 63. That Hayden had no other property out of which Myers could collect his claim, is beyond question. But Esther contends that the Race street property never belonged to Hayden; that it was purchased with her money, and was deeded to Hayden for convenience only. The testimony is to the effect that it was the intention to have the property deeded to Esther; that a mortgage had to be given to secure $5,000 borrowed from Mrs. Hill to pay part of the purchase price; that Esther was in California at the time; that the lender's husband suggested that the conveyance be made to Hayden, and that he "make the loan" and then deed the property to Esther; that the deal was carried through in that way, Hayden signing the note and mortgage and thereafter deeding the property to Esther. This testimony was not contradicted. Myers contends that the purchase money was not Esther's, but Hayden's. That presents the all-important question in this suit. According to the evidence, Hayden, in 1913, came to Denver from Oklahoma. He owned some property in Oklahoma. Esther testified

that Hayden sold his Oklahoma property; that she thinks they "lived it up" while he was working into his medical practice in Denver; that she doesn't think Hayden owns any property, real or personal; that he just about makes a living. It appears, however, that he acquired some property on St. Paul street. After Myers obtained judgment against Hayden in Oklahoma, and after Myers brought suit thereon in Denver, Hayden conveyed the St. Paul street property to his wife, Myrtle Hayden, the mother of Esther. There was not a word of testimony given by Esther, or by Hayden, or by any other person, that there was any consideration whatever for that transfer; or that after the transfer Hayden owned any property, real or personal. Hayden testified that some California street property, with "no equity in it," stood in his name at one time, but that his son, not he, owned it, and that "it was all deeded away." In reading his testimony, one is impressed with the idea that he was making an effort—a successful one—to show that since the rendition of the Oklahoma judgment he was without property. On January 22, 1920, shortly before her death, Myrtle Hayden, without any consideration therefor, but admittedly as a gift, deeded the St. Paul street property to Esther, then 19 years of age. She also gave to Esther the furniture in the house. Later the St. Paul street property was sold, and the proceeds ($7,500) were invested in the Race street property, Hayden taking title thereto, borrowing $5,000 on his own note, secured by a mortgage executed by him and covering this property, and paying the $5,000 on the purchase price. He entered into possession of the property. He and his son occupied one-half of the house (a double house) and rented the other half. He testified that he was to pay $65 per month rent for the part he occupied. This $65 and the $65 rent received for the other part were used to pay taxes and insurance, repair, water and electric bills, and to pay on the mortgage debt. He testified that he and his son (Esther's

brother) were in charge of the property. Esther testified that Hayden and her brother had not charged her anything for looking after the property; that "we have not had any settlement for 1925, but I know they will treat me right. We will settle up when I come home this summer during vacation." After the death of his first wife Hayden married again, and he and his second wife occupied part of the house from July 26, 1923, until July, 1925, when they separated. She testified that Esther visited them in August and September, 1923; that Esther "never at any time mentioned anything about owning the property, nor did she exercise any actual ownership over it"; and that Hayden "never made any mention to me of having transferred the property at 727 Race street to Esther V. Hayden." On June 6, 1923, Hayden wrote to Myers a letter in which he denounced Myers' claim as unfounded and unjust; complained bitterly of Myers' conduct "in bringing up that unjust suit"; and accused Myers of being corrupt and dishonest. The letter concludes: "There is no real estate in my name or owned by me in Denver. My daughter Esther had me buy residence at 727 and 729 Race street for her and I took title in my name as she was in California and could not sign the mortgage papers. I have deeded this property to her now, so it is not in my name, and I never was the owner. It is lots 30 and 31 in block 162 South Division of Capitol Hill, Denver. So you need not think you can get this. She is the owner and has her deed.

"This unjust judgment you are claiming was only about $75.00, in fact, and now you have tried through your chicanery to charge interest and attorney's fees and cost until you have it to the enormous sum of $555.00. How can you make such a false claim?

"Now take this matter under advisement, and I think if you would care to do the right thing that you will release me from this unjust and fraudulent judgment."

Upon a careful consideration of the facts disclosed by the record in this case, we conclude that Esther failed to establish by clear and satisfactory proof that the transaction was honest, and without intent to defraud Myers. On the contrary, it is clear that Hayden deeded the St. Paul street property to his wife for the purpose of preventing Myers from collecting a judgment that Hayden asserted—perhaps believed—to be unjust and founded upon a false claim. That he may have felt morally justified in doing so, does not alter the situation. So far as his creditors are concerned, he remained the equitable owner of that property, and was the equitable owner of the proceeds derived from the sale thereof, and of the Race street property, in which those proceeds were invested.

From the opinion of the trial court, we gather that not sufficient attention was paid to the situation presented by the conveyance of the St. Paul street property by Hayden to his wife. The court remarked: "Concerning the deed to the doctor's wife of the St. Paul street property in 1919 or 1920, whether there was a consideration or whether there was not, there is no evidence here to show that at the time that was made the doctor was insolvent, and the transaction from then on, the gift from the mother to the daughter, would be immaterial so far as the issues are concerned in this case."

Thus the burden of proving Hayden's insolvency was imposed upon Myers, whereas the law casts upon Esther the burden of proving that Hayden was solvent; that is to say, that the transfer of the St. Paul street property did not render him insolvent. The evidence on this branch of the case consisted of documents, and of the testimony of Esther and of Hayden; there was substantially no conflict in the evidence. The evidence is wholly insufficient to support the judgment.

In *Thuringer v. Trafton, supra,* Mr. Justice Garrigues, delivering the opinion of this court, said: "The finding of a trial court is not necessarily binding on a court of

review when it clearly appears from the whole record that such finding is wrong. The power of a court of review ought not to be left paralyzed so as to prevent [permit] a miscarriage of justice, merely by the erroneous findings of a trial court or the verdict of a jury. We have never refused to set aside such a verdict or finding when it is manifestly against the weight of the evidence and would result in a miscarriage of justice.''

The judgment is reversed, and the cause is remanded with directions to the lower court to enter a decree in favor of the defendants, adjudging the lien of the judgment of defendant Myers to be prior and superior to the plaintiff's right, title or interest to or in the Race street property, and dissolving the injunction restraining the sale of the property to satisfy defendant Myers' judgment against D. J. Hayden.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.