## No. 13,263.

LAMAR BUILDING AND LOAN ASSOCIATION *v.* TRUAX ET AL.
(33 P. [2d] 978)

Decided May 7, 1934.   Rehearing denied June 12, 1934.

Messrs. GOODALE & HORN, for plaintiff in error.

Mr. GRANBY R. HILLYER, Mr. GRANBY HILLYER, for defendants in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THIS is an action brought in the district court by the plaintiff in error the Lamar Building & Loan Association against Cora June Reschke and others, primarily to fore-

close a lien claimed on her land by virtue of a deed of trust given by her grantor. Findings went in favor of Mrs. Reschke, and the case was dismissed at the costs of the plaintiff association, which is here asking a reversal. Mrs. Reschke will be spoken of in this opinion as if she were the sole defendant, since the other defendants have no interest in the controversy before us.

The defendant had received her conveyance expressly subject to the encumbrance. Her answer admitted the validity of the deed of trust, but alleged that she had paid in full the indebtedness thereby secured. On the other hand, her counsel claims that the answer pleaded estoppel and the trial court seems to have taken the view that, notwithstanding the language in the answer, estoppel—and not payment—was the defense tendered.

1. Counsel for the plaintiff made seasonable objection to the alleged pleading of estoppel as wholly insufficient. This insufficiency is clearly apparent, there being in the answer no statement whatever that the representations now claimed to form the basis of an alleged estoppel were made with the intention that they should be acted upon. *Beals v. Cone,* 27 Colo. 473, 480, 62 Pac. 948, 950. Indeed, there is no allegation that such representations were false, nor does the pleading even hint that they were false. The objection was consistently repeated throughout the trial. To all evidence of alleged estoppel offered by the defendant, the plaintiff expressly objected on the ground that it was not within the issue. The trial court was not misled as to the ground of attack, for this was open, direct and unmistakably persistent. That attack was made at the earliest possible moment.

Thus undoubtedly, as we have seen, the answer does not contain a sufficient pleading of estoppel. If that is true now, it was true when the trial judge was called upon to rule on the objections. These should have been sustained. Had they been sustained, the judgment would have had to go against the defendant unless she had asked and obtained leave to amend the answer. Amend-

ment is the defensive weapon offered to him whose defective pleading is assailed. However, at no time did the defendant ask for leave to amend. It is to be noted that the alleged defense of estoppel appeared in the same part of the answer as the defense of payment, and not as a separate defense. There is ostensibly but a single affirmative defense. Counsel for plaintiff could therefore not have successfully raised by demurrer any objection to a supposed insufficiency, since the allegation of payment made the answer absolutely good and complete on its face, as an adequate confession and avoidance. In this respect the pleading differs from the positively defective complaint in *Musgrove v. Brown,* 93 Colo. 559, 27 P. (2d) 590, where one might reasonably have expected an early sufficiency test by demurrer. In the present case, on the contrary, the state of the pleadings not only did not indicate the propriety of any demurrer, but did not suggest the slightest desirability of any motion from the plaintiff. Compare: *McCrimmon v. Raymond,* 77 Colo. 81, 84, 234 Pac. 1058, 1059. Nothing about the alleged statement of estoppel makes that statement more than mere matter of inducement, introduction or harmless surplusage, lacking (as it does) what are universally considered essential elements of estoppel. The statement is as easily explainable on the ground of being a purely evidentiary statement of the amount actually due, as it is on the ground that it was intended as a statement of estoppel when this statement is palpably defective as such. The former explanation is the more likely and reasonable, in fact, because the statement is immediately followed, not by an allegation of the missing elements of estoppel, but by the direct and unambiguous claim that the amount actually due was paid by the defendant. We cannot disregard one admittedly well-pleaded defense, and exercise our imagination to supply missing constituents of another defense the utter inadequacy of which has in every possible way been brought to the attention of trial court and defendant's counsel. The duty of bringing the unsatis-

factory pleading up to the conceded standard fell upon the defendant, who would have had her remedy by way of amendment if she had chosen to use it and had made the requisite showing. Compare: *McCrimmon v. Raymond, supra.* Our code system was intended to simplify pleading and procedure, but not to encourage deliberate and defiant abandonment of sound principles of legal statement. Nor does it contemplate that a court shall accept a plainly defective statement, affirmatively objected to on the ground of its defectiveness, and ignore a wholly adequate and correct statement of a proper defense with which the former is, as in this case, hopelessly irreconcilable. The points we make will be best substantiated by quoting from the answer (verbatim except that, for convenience, the word "defendants" and the corresponding verbs have been changed to the singular):

"That on or about, to-wit: April 27, 1928, the defendant * * * purchased the property * * * from * * * Margaret Truax at and for an agreed purchase price, and that prior to the payment of the said purchase price * * * the defendant * * * having been advised and having knowledge of the existence of the note and trust deed * * * consulted the plaintiff herein with reference to the amount of the indebtedness remaining due and unpaid which said plaintiff held against the property * * * and that the defendant * * * further consulted the plaintiff with reference to the amounts which had theretofore been paid on said note and trust deed by the said Margaret Truax and with reference to the balance due thereunder, and that at said time·the defendant * * * was informed and advised by the plaintiff herein, its agents and employees that there remained due on account of the said note and trust deed a balance of $247.00, which said sum was due and payable in monthly instalments of $19.00 each and that there remained 13 of such instalments yet to be paid on account of said balance due and owing under the said note and trust deed, and that thereafter, and placing full and implicit reliance upon the

statements and representations so made to them by the plaintiff herein, the defendant * * * paid to the said Margaret Truax the purchase price theretofore agreed upon between them for the said property, less the said sum of $247.00.

''That the defendant * * * has paid to the plaintiff herein on account of the balance due and owing under said note and trust deed the sum of $274.00 which said sum is in excess of the amount due and owing under said note and trust deed and is in excess of the amount which the plaintiff had * * * advised and informed the defendant * * * remained due and payable under such note and trust deed.

''That * * * the defendant * * * had no means of ascertaining the correct amount due and payable under said note and trust deed at the time that she so purchased the property * * * other than by consulting plaintiff herein, and that the defendant * * * did so consult the plaintiff herein and was informed by the said plaintiff of the balance due and payable on said note and trust deed, as is hereinbefore alleged, and that the defendant * * * placing full and complete reliance upon the statements and representations so made to them by the plaintiff * * * purchased the property * * * relying upon the truth and correctness of the statements so made * * * by the plaintiff.

''That the defendant * * * has fully paid and satisfied the legal and correct amount due under the note and trust deed set out in the complaint herein, and that said note is fully paid and satisfied and the trust deed is therefore null and void and should be released and discharged.''

In view of the failure to amend the answer thus before us, so as to make it supply manifest defects if it were intended to rely upon estoppel, the assumption is naturally justified that what here purports to be but one ground of defense is the well-pleaded defense of payment. It would be difficult, if not impossible, to account

for the direct, sworn statement of payment of the amount due, if that were not the proper interpretation. The plaintiff had a right to make such an assumption. Objection was made to every effort of the defendant to introduce evidence which would have been admissible if estoppel had been properly pleaded, as it was not; and the defendant, though warned by proper objections, failed and refused to profit thereby. At no time did counsel for the plaintiff cease objecting to any such attempted deviation from the defense of payment, squarely presented by the answer, to that of estoppel, not presented adequately or at all.

■ One of the most important duties of a trial court is to see that the trial proceeds upon the issues actually made up between the parties. In the case at bar, issue was definitely joined upon the alleged payment by the defendant in full settlement of the indebtedness to the plaintiff. The trial ought to have been limited to that question. The court erred by allowing the question of estoppel to be litigated when, upon objection, the defendant failed or refused to ask permission for filing an appropriate amendment. Such an amendment would have been different and apart from the already pleaded defense of payment. It would have constituted a separate defense, which in turn could have been separately dealt with by the plaintiff's replication in accordance with the ordinary rules of pleading. The error was clearly prejudicial, and for this reason the judgment must be reversed.

■ 2. Even if estoppel had been properly pleaded, however, the evidence in the case, particularly that of the defendant and her witness, would render the defense of estoppel untenable. The defendant testified that she and her husband called upon a Mr. Myers, secretary and treasurer of the plaintiff association, at his office in Lamar on or about April 27, 1928, possibly as early as April 15, but not earlier; that she told Myers she wanted to close a deal on the property involved and wanted to

know exactly what was owing on the deed of trust thereon held by the plaintiff; that he told her there was a little back interest, penalty and interest upon it, $59.03; that he had a lady in the office make for her a statement in typewriting (Exhibit 1), saying ''$59.03 due up to February payment which was made. $55.25 being delinquent interest 3.78 penalty. 59.03 March payment due—$19.00 plus 18 cents penalty April payment will be due April 30th—$19.00'' (at the bottom of which typewritten statement appears written with lead pencil by the defendant's husband a self-serving declaration which said ''1928 April Pd out in 13 Mounth'' and contained a multiplication of 19 by 13, showing 247 as the product); that the husband wrote the pencil notation at the window immediately after Myers had told him there were 13 $19 payments still to pay; that one cash payment, $38, was made at the plaintiff's office in her presence quite late in 1928 or in the spring of 1929; that she had talked about the deal with her grantor, Mrs. Truax, before the talk with Myers, but had not closed the deal until after the Myers interview; that she relied upon Myers's statement, and would not have purchased if she had known there was a greater amount due; that the deal was made in April, 1928, she was positive about it; that she got her deed after that, after she saw Myers; that it was not given her until the deal had been closed; that she had talked about the deal the first of April or last days of March; that she got the deed after her talk with Myers and after the deal was closed; that she then put it on record; that they didn't close the deal until in April. The dates were fixed by repeated and positive statements.

A certified copy of the deed from Mrs. Truax to the defendant was produced by plaintiff's counsel, dated, acknowledged and recorded on February 25, 1928, but no correction of her testimony was made by the defendant or explanation given as to her flat contradiction of the physical evidence presented by the deed itself. All that

she said in response was: "But we didn't close the deal until in April."

The husband of the defendant testified very much like his wife. He stated, however, that Myers did not say anything about the loan being delinquent, but merely gave them the paper (Exhibit 1), "it was $59.03, back"; that they did not know it was delinquent, but (in response to the question whether Mrs. Truax did not tell him it was delinquent) "she [Mrs. Truax] didn't say exactly how the,—she said she paid it in lump sums, mostly; she didn't pay it monthly payments"; that the talk with Myers came before the deal was closed, and that they got the deed after that; that he made two cash payments, one $38, the other $19, "in about,—last of 1928 or 1929, in there some place, couldn't say just exactly"; that he did not take a receipt for either; that he knew the indebtedness was payable at the rate of $19 a month.

But neither the deed of trust nor the promissory note mentions $19 a month. None of the defendant's eight payments by check was $19.

The typewritten statement (Exhibit 1), claimed to have been given the defendant by Myers, does not agree with the plaintiff association's books. Instead of an unpaid balance of $247 after April, 1928, the books of plaintiff show a balance due, at the institution of this action, of more than $1,400.

Not only are the Reschkes contradicted by the deed in the record, but by Myers also; and there is a serious and palpable variance between the defendant's answer (sworn to by both her and her husband) and the evidence on her behalf.

The total failure, as above indicated, to establish the supposed defense of estoppel would thus, in and of itself, require a reversal of the judgment below, apart from any consideration of the question whether estoppel was properly pleaded.

3. Other serious questions are argued. These are entitled to receive careful consideration, but, owing to

the views already expressed, we do not find it necessary to rule upon them. All such matters are left for proper disposition by the trial court at another trial if one is had.

The judgment will be reversed and the case remanded for a new trial or for proceedings not inconsistent with this opinion.

Judgment reversed.

MR. JUSTICE BUTLER, MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE BUTLER, dissenting.

My views with reference to this case do not accord with those of the majority. I therefore dissent.

The Lamar Building and Loan Association sued Cora June Reschke and her husband, O. R. Reschke, and others to foreclose a deed of trust of certain lots in Springfield, for the non-payment of $1,261.63. The trust deed was given by Margaret Truax to secure the payment of $1,000 and interest, payable in small monthly installments until her stock in the association should have matured in accordance with the by-laws. By mesne conveyances, title to the property became vested in Cora June Reschke, who purchased it from N. H. Truax. The Reschkes filed an answer and a cross-complaint. The court found for the Reschkes and enjoined the association from foreclosing the trust deed.

1. There was evidence tending to prove that before they paid the purchase money, the Reschkes called at the office of the association and informed its secretary, J. H. Myers, who had charge of the loan and who later verified the complaint and testified at the trial, that they were dealing for the purchase of the property, and understood that the association held a loan against it, and they asked what balance remained unpaid; that he told them that there were thirteen nineteen-dollar payments remaining to be paid on it, making $247; that the Reschkes relied

upon that statement and bought the property, retaining $247 from the purchase price; and that they paid more than the $247 in installments to the association. The court made a general finding for the Reschkes, and held that the association, by its representations, was estopped from demanding from them more than $247, which amount they had paid to the association in installments.

Counsel for the association call our attention to certain apparent contradictions in the evidence.

It is said that the deed received by the Reschkes was dated and recorded February 25, 1928, whereas the Reschkes testified that the deal was closed and the deed received and recorded in April, after Myers gave them the information concerning the amount remaining unpaid. It is argued that they must have obtained the information after they bought and paid for the property, and therefore were not prejudiced by the information given to them. The trial occurred four years after the conversation, and while their recollection of what occurred may have remained clear, their recollection of dates may not have been so clear. That such a conversation did occur before the Reschkes paid the purchase price is established by abundant evidence and was found by the court. Reschke testified that in April, in the presence of his wife, he told Myers that they were on the deal for this property, and wanted to know what was against it; that at Myers's request, a clerk in the office made out a statement (Exhibit 1) showing $59 past due at that time; that witness told Myers that that did not suit them, that they wanted to know what was against the property; that Myers looked at the books and said, "Thirteen payments more on it, nineteen dollars a payment"; that in the presence of Myers, witness thereupon wrote in pencil on Exhibit 1 the figures just given and the multiplication of 19 by 13, making a total of 247. "Q. You saw Mr. Myers and got his statement before you closed the deal? A. Before we closed the *entire* deal." Mrs. Reschke testified substantially to the same effect. She said that

they told Myers that they were figuring on closing the deal and wanted to know exactly what was against the property, and that he furnished the information as stated above. She said several times that the conversation was in April, and that the deed was received after the conversation, but she does not seem to have been certain of the date. ''Q. But you didn't get it [the deed] before the 15th of April? A. I said I wouldn't say exactly; I say the deal wasn't closed until after we saw Mr. Myers, but I couldn't tell the exact date. * * * Q. Now, as a matter of fact, Mrs. Reschke, you purchased this from Mrs. Truax on the 25th day of February, and your deed was recorded the same day? A. But we didn't close the deal until in April. * * * Q. And as a matter of fact, you had already bought this property, and the deed had already gone of record? A. We had made the deed, but we hadn't closed the deal.'' The *uncontradicted testimony* is to the effect that *after* they received the information from Myers they paid the purchase price, and that they deducted therefrom only $247 because of the secretary's statement to them concerning the amount remaining unpaid.

Myers testified that the Reschkes came into the office and told him that they were interested in the property and wanted to find out the condition of the loan. ''Q. Would you state positively that they did not tell you they intended to purchase this property? A. No.'' He denied having told the Reschkes that $247 remained to be paid on the loan.

Our attention is also called to the fact that the Reschkes testified that Myers told them that there remained unpaid thirteen monthly installments of $19 each, amounting to $247, whereas the books of the association showed a balance of $1,400 unpaid and that the installments were not $19 each. The association must have had many accounts on its books; and evidently the clerk looked at the wrong account and gave the Reschkes the figures appearing in that account. The original promis-

sory note and trust deed are before us. The note is made payable in installments of eighteen (not nineteen) dollars per month. In the trust deed the typewritten amount of the monthly installments (whatever it was) has been erased and there have been substituted with pen and ink the word "twenty" (not nineteen) and in parentheses "$20" (not $19). These alterations are not explained. Whether they were made before or after the execution and delivery of the trust deed does not appear; nor does it appear whether they were made before or after the recording of the trust deed. The trial court no doubt believed, and it was justified in believing, that the giving of the wrong figures to the Reschkes was merely another instance of carelessness such as characterized the preparation of the note and the trust deed.

After hearing the witnesses testify and observing their appearance and demeanor on the witness stand, and considering the apparent contradictions to which counsel call attention, the trial court found that the defendants settled with their grantor on the basis of the information given them by the plaintiff's agent that $247 was the amount remaining unpaid; and that they paid that amount to the plaintiff in installments. The court also made a general finding in favor of the defendants, and held that the plaintiff is estopped from demanding a larger sum from the defendants. I respectfully submit that this court is not justified in setting aside the trial court's findings and holding.

2. But it is said that the plea of estoppel is insufficient because it contains no allegation that the representations were made with the intention that they should be acted upon.

In substance, the plea is that the Reschkes purchased the property at an agreed price; that before paying the purchase price, having knowledge of the existence of the trust deed securing to the association the payment of the note in monthly installments, they consulted the association with reference to the amount of the indebtedness

remaining unpaid; that the association informed them that there remained due a balance of $247, which was payable in thirteen monthly installments of $19 each; that placing full and implicit reliance upon the statements and representations so made, they paid to the owner of the property the purchase price agreed upon, less $247; and that thereafter the defendants paid to the plaintiff $274, which was in excess of the amount that the plaintiff informed them remained due and payable, and that the defendants thereby paid and satisfied the note. The objection to the sufficiency of the plea was made for the first time at the trial; and making such an objection for the first time at the trial is not encouraged by the courts, and when so made will be overruled if by fair implication or most liberal construction the pleading can be held to be sufficient. *Musgrove v. Brown,* 93 Colo. 559, 27 P. (2d) 590; 49 C. J. p. 822.

Objection to a pleading for insufficiency can be raised at any time. If, therefore, the defect was such as to prejudice the substantial rights of the plaintiff, the judgment should be reversed; otherwise, it should not be reversed because of such defect. Section 84 of the Code of Civil Procedure provides: ''The court shall in every stage of an action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect.'' And see Id. section 439.

The object of pleading is to inform the adverse party of the cause of action or defense relied upon by the pleader, so that he may have an opportunity to meet and defeat it, if possible, upon the trial. *Soden v. Murphy,* 42 Colo. 352, 94 Pac. 353; *Myers v. Hayden,* 82 Colo. 98, 257 Pac. 351. The answer in this case made it clear that the pleader relied upon the defense of estoppel. It was pleaded at considerable length, but it was defective in omitting the one element to which attention has been called. But, as we have seen, the evidence is to the effect

that the Reschkes fully informed the association's secretary of the pendency of their deal for the property. When the secretary furnished the information concerning the balance remaining unpaid he knew the purpose for which the Reschkes sought it, and it follows, as a necessary inference, that he was aware of their intention to act upon the information and furnished it with the intention that they should act upon it. The plaintiff was not misled by the defect in the plea.

The controlling question is whether the substantial rights of the plaintiff were adversely affected by the defect in the plea and the ruling of the court admitting the evidence in support of the plea. Clearly they were not; hence we are forbidden by the Code provision quoted above to reverse the judgment because of such defect and ruling.

The trial court properly refused to compel the Reschkes to bear a loss that was due to no fault on their part, but that resulted solely from the carelessness of the association's secretary. The court, by its judgment, placed the loss upon the association, where it belongs. The judgment, it seems to me, should be affirmed.

Mr. Justice Campbell and Mr. Justice Hilliard concur in this dissenting opinion.